**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **JAMES JONES, # K-89167,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 15-cv-1264-NJR** |
| | ) | |
| **BANTRY GROUP CORP. (d/b/a Wexford** | ) | |
| **Health Sources, Inc.),** | ) | |
| **JOHN COE,** | ) | |
| **ELAINE HARDING,** | ) | |
| **and UNKNOWN PARTIES,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, District Judge:**

Plaintiff is currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), where he is serving a 20-year sentence for a drug offense. Plaintiff has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983; he also asserts claims under the Americans with Disabilities Act and the Rehabilitation Act. His claims arose during his incarceration at Lawrence Correctional Center ("Lawrence"). Defendants allegedly delayed Plaintiff's necessary hernia surgery, prolonging his suffering. The complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

### <u>The Complaint</u>

Plaintiff was confined at Lawrence between December 24, 2012, and early February

2014, during which time he was under the care of former Medical Directors Dr. John Doe I and Dr. Williams, and Medical Director Dr. John Coe. By way of background, he explains that in 1996, he was diagnosed with an inguinal (groin) hernia on his right side, which was surgically repaired. At that time, he learned that a "reducible" hernia is one that can be pushed back into the body. An "incarcerated" hernia cannot be pushed back in, and a "strangulated" hernia means that the blood supply has been cut off to the tissue in the hernia, and emergency surgery is required (Doc. 1, pp. 6-7).

In 2011, Plaintiff was diagnosed with another inguinal hernia, this time on his left side. Two years passed, however, before Defendants authorized surgery to repair his hernia. By the time surgery was performed in November 2013, the hernia had become incarcerated and extremely painful, requiring Plaintiff's emergency admission to the hospital (Doc. 1, p. 8).

Soon after Plaintiff's transfer to Lawrence, on December 29, 2012, he informed Defendant Harding (nurse practitioner) of his hernia diagnosis. He was in severe pain and asked to be referred to a doctor for surgery. Defendant Harding refused to refer Plaintiff to a doctor, and he informed him that according to policy, surgery for reducible hernias is considered elective. Plaintiff states that Defendant Bantry Group Corp./Wexford Health Sources, Inc. ("Wexford") had a policy of "watchful waiting" regarding reducible hernias, where they are treated with non-surgical means (Doc. 1, p. 7).

On June 12, 2013, Plaintiff saw Defendant Harding again regarding his hernia pain. She determined that the hernia was "easily reducible" (Doc. 1, p. 10). Several days later, Plaintiff saw an unknown nurse because his pain had become markedly worse; the nurse gave him a mild pain reliever. Neither that medication nor the stool softener prescribed by Defendant Harding was effective to treat Plaintiff's pain.

Plaintiff's brother made two calls on Plaintiff's behalf requesting a surgical referral, noted by Defendant John Doe III.

On August 8, 2013, Defendant Harding finally referred Plaintiff to see a doctor after he again complained of severe hernia pain. On September 14, 2013, Plaintiff saw Defendant Harding again with severe pain. The doctor's examination did not take place until September 21, 2013. Dr. Williams (who is not included as a Defendant) saw Plaintiff and approved a consultation for him to have surgery, noting that at that point the hernia was "extremely difficult to reduce" (Doc. 1, p. 13).

On September 24, Defendant Dr. Coe noted that the surgical referral made by Dr. Williams was "under collegial review" and that Dr. Garcia wanted to read Dr. Williams's note before making a decision on surgery. *Id.* Plaintiff alleges that Defendant Wexford has a policy of "collegial review" of referrals for surgery that creates unnecessary delay in implementing the medical decisions of primary care doctors, and limits the care provided to inmates such as himself (Doc. 1, p. 14). He charges that Unknown Defendant John Doe II "recklessly selected a vendor (Wexford)" which has unnecessarily limited care to prisoners.

On November 6, 2013, Defendant Harding requested Defendant Coe to follow up on Plaintiff's September 21 surgical referral, as no decision had yet been made.

On November 19, 2013, Defendant Coe attempted to manually reduce Plaintiff's severely painful hernia, without sedating Plaintiff. Plaintiff states that Defendant Coe did this in order to make a decision on the surgical referral. This procedure caused Plaintiff extreme pain, as well as caused the hernia to become incarcerated and inflamed, which created an "urgent" need for surgery (Doc. 1, p. 15). Plaintiff was admitted to the hospital that day for hernia repair surgery.

Post-surgery, Plaintiff was discharged and returned to Lawrence on November 21, 2013,

with a prescription for pain medication. Plaintiff spent only one day in the infirmary, and he was then moved to segregation, where he was not given the pain prescription as often as it was recommended or needed. As a result, he suffered from severe pain without adequate pain relief from November 23, 2013, through January 15, 2014, and again for the time from January 22 to February 22, 2014 (Doc. 1, p. 18).

On January 22, 2014, Plaintiff suffered a new injury to the right side of his abdomen; he saw Defendant Coe the next day for an evaluation. Defendant Coe noted at that time that Plaintiff had not been receiving his pain medication and ordered more for him from the hospital. Plaintiff's pain continued to get worse, and a nurse noted that the right side of Plaintiff's abdomen appeared swollen compared to his left side. Plaintiff saw Defendant Coe for this condition on February 4. Defendant Coe concluded that Plaintiff did not have a right inguinal hernia, but that his right abdominal wall was bulging out (Doc. 1, p. 20).

Plaintiff was transferred to another prison not long after this, and on February 25, 2014, he was diagnosed at that facility with a right inguinal hernia. At the time he filed this action, Plaintiff had not been given surgery to repair this new hernia, and he continues to suffer pain from his condition (Doc. 1, p. 21).

Plaintiff asserts claims that Defendants (he refers to them collectively) were deliberately indifferent to his serious medical needs by their failure to diagnose and treat his hernia, and their failure to train or supervise employees to provide proper medical care (Doc. 1, pp. 22-23). He also claims, apparently with reference to his hernia, that he is an "otherwise qualified individual with a disability" as defined in the Americans with Disabilities Act and the Rehabilitation Act, and that Defendants have discriminated against him on the basis of his disability by refusing to properly treat his medical needs and maintaining a policy that "has a disparative [sic] impact on

reducible hernias" and that unnecessarily delays surgery (Doc. 1, pp. 25-28). Plaintiff seeks injunctive relief, compensatory and punitive damages (Doc. 1, p. 29).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the complaint, the Court finds it convenient to divide the *pro se* claims into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

> **Count 1:** Eighth Amendment deliberate indifference claim against Defendants Harding, Coe, and the Unknown (John Doe) Defendants, for delaying and/or denying treatment for Plaintiff's left inguinal hernia from December 2012 through February 2014;

> **Count 2:** Eighth Amendment deliberate indifference claim against Defendant Bantry Group/Wexford Health Sources, Inc. ("Wexford"), for maintaining a policy which delayed surgery for Plaintiff's left inguinal hernia from December 2012 through November 2013;

> **Count 3:** Eighth Amendment deliberate indifference claim against Defendant Coe for failing to diagnose or treat Plaintiff's right inguinal hernia in January and February 2014, and against Defendant Wexford for maintaining a policy which delayed treatment of the right inguinal hernia;

> **Count 4:** Claims under the Americans with Disabilities Act and the Rehabilitation Act, that because Plaintiff is a person with a disability (a hernia), Defendants have discriminated against him by failing to treat and delaying treatment of his hernia.

Any other claim that is mentioned in the complaint but not addressed in this Order should be considered dismissed without prejudice.

## Count 1 – Deliberate Indifference – Individual Medical Providers – Left Inguinal Hernia

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. "Deliberate

indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015). The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Here, Plaintiff's painful hernia condition satisfies the objective component of an Eighth Amendment claim. The remaining question is whether Plaintiff's prison medical providers acted or failed to act with deliberate indifference to a known risk of serious harm.

Defendant Harding was the first caregiver to assess Plaintiff's hernia, and according to Plaintiff, approximately eight months passed before she agreed to refer him to a doctor for an evaluation as to whether surgery was required. Additionally, the medication she gave him did not relieve his severe pain. It is not clear why Plaintiff's physician consultation did not occur for approximately six more weeks after Defendant Harding's referral. Further factual development will be necessary in order to determine whether Defendant Harding's response to Plaintiff's medical condition rose to the level of unconstitutional deliberate indifference. Count 1 shall thus proceed against Defendant Harding.

Dr. Williams is not included in this claim, because Plaintiff did not list him as a Defendant, and his prompt approval of a surgical consultation does not support a claim for deliberate indifference.

The facts suggest that Defendant Dr. Coe may have been responsible for at least some of the delay (from September 24 to November 19) in approving Plaintiff's surgery during the period of "collegial review." This alone could support a claim for deliberate indifference.

Turning to Defendant Coe's unsuccessful and painful attempt to reduce Plaintiff's hernia on November 19, 2013, he took that action (according to Plaintiff) in order to determine whether surgery was necessary. If so, this indicates that Defendant Coe was trying to address Plaintiff's medical condition at that time, which undercuts a claim for deliberate indifference regarding that particular incident. At the same time, the reduction attempt may have constituted negligence or malpractice–but that level of misconduct does not violate the Constitution. Plaintiff points out, however, that Defendant Coe was aware of Dr. Williams's assessment (six weeks earlier) that the hernia was extremely difficult to reduce, and given Plaintiff's medical history, Defendant Coe's reduction attempt could be considered deliberate disregard for a significant risk of harm. Further factual development is appropriate in order to assess whether any of Defendant Coe's conduct was unconstitutional. Therefore, Plaintiff may also proceed in Count 1 with his deliberate indifference claim against Defendant Coe.

Plaintiff's allegation that following his surgery he was not given prescription pain medication as ordered to relieve his discomfort may support a claim for deliberate indifference. The complaint does not identify, however, which of the Defendants (or any other official) was

responsible for that problem.[1] Therefore, the portion of the claim based on the failure to adequately medicate Plaintiff's pain is dismissed without prejudice at this time.

Plaintiff lists three John Doe Defendants in the caption of his case: John Doe I (on-site Vendor Medical Director), John Doe II (Illinois Department of Corrections Healthcare Contractor), and John Doe III (on-site Healthcare Unit Administrator) (Doc. 1, p. 1). After careful review, however, the Court concludes that the complaint fails to state a claim upon which relief may be granted against any of these Unknown Defendants.

First, the statement of claim includes no factual allegations directed to Defendant John Doe I. Merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption."). Therefore, Defendant John Doe I shall be dismissed from the action without prejudice.

Plaintiff's claim against Defendant John Doe II is that he "recklessly" chose Defendant Wexford to be the health care provider for prisoners, despite the company's system of limiting care. This legal conclusion is insufficient to state a claim against this individual for deliberate indifference to Plaintiff's particular medical concerns. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements"). Defendant John Doe II also shall be dismissed without prejudice.

The only factual statements regarding the conduct of Defendant John Doe III are that he made notations in Plaintiff's medical records to document two phone calls received from Plaintiff's brother, inquiring about the lack of treatment for Plaintiff's hernia (Doc. 1, pp. 9, 11-

---

[1] Plaintiff states that Defendant Coe ordered more medication in January 2014; this action shows appropriate care, not deliberate indifference.

12). Plaintiff does not describe having any contact with this person, and these facts do not support an inference that Defendant John Doe III was deliberately indifferent to Plaintiff's medical condition. He shall also be dismissed without prejudice.

To summarize, Plaintiff's claims in **Count 1** shall proceed only against Defendants Harding and Coe, for deliberate indifference to Plaintiff's left inguinal hernia condition from December 2012 through February 2014.

### Count 2 – Deliberate Indifference – Bantry Group/Wexford Health Sources, Inc.

Defendant Bantry Group/Wexford Health Sources, Inc. is a corporation that employs Defendants Harding and Coe and provides medical care at the prison, but it cannot be held liable solely on that basis. A corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004).

Plaintiff blames much of the delay in his care on policies promulgated by Defendant Wexford and followed by Defendants Harding and Coe, specifically the policy to deny "elective" surgery for reducible hernias, and to require a lengthy "collegial review" of the primary doctor's recommendation for surgery. At this stage, these allegations are sufficient for **Count 2** to proceed, regarding the response to Plaintiff's left inguinal hernia.

Plaintiff's general allegations against the Defendants, collectively, that they failed to train or supervise other staff to properly respond to his medical needs, is too vague to state a claim (Doc. 1, p. 23). Further, this theory adds nothing to the other claims in this case which shall receive further review. The "failure to train/supervise" portion of Plaintiff's claim is therefore dismissed without prejudice.

**Count 3 – Deliberate Indifference – 2014 Right Inguinal Hernia**

This count addresses Plaintiff's new injury in January 2014 that resulted in abdominal pain and was eventually diagnosed as another inguinal hernia, this time on his right side. Defendant Coe examined Plaintiff on January 23 and February 4, concluding that Plaintiff did not have a right inguinal hernia. Plaintiff asserts that Defendant Coe "unreasonably disregarded" relevant medical records in reaching that conclusion. Later in February 2014, after Plaintiff's transfer, another doctor diagnosed the right inguinal hernia.

Defendant Coe's misdiagnosis does not amount to deliberate indifference. Medical negligence or malpractice, which may be evident from a practitioner's mistake, does not violate the Constitution. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008); *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001). Further, the fact that another doctor diagnosed the hernia does not demonstrate that Defendant Coe's failure violated the Eighth Amendment. A difference of opinion between medical professionals concerning the treatment of an inmate will not support a claim for deliberate indifference. *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *see also Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (courts will not takes sides in disagreements about medical personnel's judgments or techniques); *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997) ("medical malpractice in the form of an incorrect diagnosis or improper treatment does not state an Eighth Amendment claim."). For these reasons, **Count 3** against Defendant Coe shall be dismissed without prejudice.

Plaintiff's complaint also states that as of November 2015, Plaintiff's right inguinal hernia has not been repaired. But he includes no facts as to what treatment, if any, he has been given at his current prison, nor does he include any of his current treating professionals as

Defendants in this action. With this absence of facts, the Court cannot speculate as to whether any of Plaintiff's current providers may have been deliberately indifferent to his condition in the time since Plaintiff departed from Lawrence, or whether any policy directive from Defendant Wexford may be a factor affecting his current doctor's decisions regarding potential surgical repair. Based on the complaint as currently pled, the Court has no basis to consider any injunctive relief directed toward those currently responsible for Plaintiff's treatment. **Count 3** shall also be dismissed without prejudice against Defendant Wexford.

Because Plaintiff is no longer under the care of the Lawrence Defendants (Harding and Coe), his request for injunctive relief against them appears to be moot. *See Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004) ("when a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot"); *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1995).

## Count 4 – Americans with Disabilities Act/Rehabilitation Act

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability . . . be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

A hernia may, at least in the employment context, fall within the ADA's definition of a disability. *See Bob-Maunuel v. Chipotle Mexican Grill, Inc.*, 10 F. Supp. 3d 854, 881 (N.D. Ill. 2014). But Plaintiff here is engaging in the kind of "artful pleading" that the Seventh Circuit has rejected, with regards to prisoners complaining about their medical treatment, or lack thereof. "[A] prison official does not violate the ADA when failing 'to attend to the medical needs of ... disabled prisoners.' " *Resel v. Fox*, 26 F. App'x 572, 576-77 (7th Cir. 2001) (quoting *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir.1996) (which concluded that a hernia is not a disability

under the ADA)). A claim for inadequate medical treatment is improper under the ADA. *Id.* This reasoning is equally applicable to Plaintiff's claim under the Rehabilitation Act. **Count 4** shall therefore be dismissed with prejudice.

**Pending Motion**

Plaintiff's motion for leave to proceed *in forma pauperis* ("IFP") (Doc. 2) shall be addressed in a separate order.

The motion for service of process at government expense (Doc. 3) is **GRANTED IN PART AND DENIED IN PART.** Service shall be ordered below on those Defendants who remain in the action. No service shall be made on the dismissed Defendants.

Plaintiff's motion for recruitment of counsel (Doc. 4) shall be referred to United States Magistrate Judge Wilkerson for further consideration.

**Disposition**

**COUNT 3** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. **COUNT 4** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted. The **Unknown Party Defendants (John Does I, II, and III)** are **DISMISSED** from this action without prejudice.

The Clerk of Court shall prepare for Defendants **BANTRY GROUP CORP./WEXFORD HEALTH SOURCES, INC., COE,** and **HARDING**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect

formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 4).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs

under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  December 7, 2015**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**